UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| J.P.R., ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | No. 2:26-cv-00420-JPH-MKK |
| ) | |
| TODD BLANCHE Acting Attorney ) | |
| General, U.S. Department of Justice, *et* ) | |
| *al.*, ) | |
| ) | |
| Respondents. ) | |

**ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS**

JPR is detained at the Clay County Jail at the direction of federal immigration authorities. He filed a petition for a writ of habeas corpus, arguing that his detention is unlawful because the government is not significantly likely to carry out his final removal order in the reasonably foreseeable future. Because the record reflects that the government is actively engaged in removal efforts, the Court denies JPR's petition without prejudice.

## I. Facts

JPR, a Honduran citizen and national, applied for admission to the United States at a port of entry in 2017. He applied for and received asylum in 2018. Dkt. 1-3 at 2. Shortly thereafter, JPR was charged with two felonies in Kentucky—second-degree rape and promoting a sexual performance by a minor. He was found guilty and sentenced to ten years in prison. JPR has served that sentence. Dkt. 12-1 at 10–27.

At the conclusion of JPR's prison sentence, the government initiated removal proceedings under 8 U.S.C. § 1227(a)(2)(A)(iii). Dkt. 12-1 at 4–7. He entered ICE custody at that time. Dkt. 1 ¶ 33.

In April 2025, an immigration judge ordered that JPR's asylee status be terminated, that he be removed to his native Honduras, and that his removal to Honduras be deferred under the Convention Against Torture (CAT). Dkt. 12-1 at 28–32. Both parties waived any appeal to the Board of Immigration Appeals, *see id.* at 31, and they agree that the removal order was immediately administratively final.

In November 2025, the government removed JPR to Honduras in violation of the immigration judge's order. Due to his fear of torture, JPR remained in hiding until his attorney secured his return to the United States (and ICE detention) in March 2026. Dkt. 1 ¶ 39.

On April 30, 2026, the government notified JPR that it intends to remove him to Mexico. Following a reasonable fear interview, the government determined JPR had not shown it is more likely than not he would be persecuted or tortured in Mexico. *Id.* ¶ 40; dkt. 12-2 (May 15, 2026, Third Country Screening Notice). JPR has challenged his removal in the Seventh Circuit. That challenge remains pending, and no stay has been issued.

## II. Motion for Leave to Proceed Under Pseudonym

JPR's unopposed motion for leave to proceed under a pseudonym, dkt. [4], is **granted**. Federal courts maintain a "strong presumption that adult litigants must use their own names." *Doe v. K.J.*, No. 25-1046, 2025 WL 2755815, at *1

(7th Cir. Sept. 29, 2025). The Seventh Circuit has permitted litigants to proceed pseudonymously, however, to limit exposure to retaliatory violence. *See P.A.-V. v. Bondi*, 148 F.4th 511, 515 (7th Cir. 2025) (granting motion to proceed under pseudonym "out of an abundance of caution" because movant's "fear of retaliatory acts of violence . . . renders anonymous litigation prudent" and "the potential harm from disclosure outweighs any potential harm of concealing P.A.-V.'s full name"); *E.F.L. v. Prim*, 986 F.3d 959, 961 (7th Cir. 2021) ("Because of E.F.L.'s allegations of domestic abuse and her fear of retaliation, this court granted her motion to use a pseudonym while pursuing this appeal."). Here, the immigration judge's determination that JPR is at risk of torture if he returns to Honduras is strong evidence that he reasonably fears violent retaliation if he proceeded under his full name.

### III. Analysis

A federal court may issue a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). JPR argues that his continued detention violates 8 U.S.C. § 1231(a)(6) as interpreted by *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001), because his removal is not likely to occur in the reasonably foreseeable future. JPR argues that, for the same reason, his continued detention also violates the Fifth Amendment's due process clause.

### A.    Section 1231

8 U.S.C. § 1231 authorizes detention of certain noncitizens subject to final removal orders.  Section 1231(a)(1) establishes a 90-day "removal period." Here,

the removal period began when JPR's removal order became "administratively final." 8 U.S.C. § 1231(a)(1)(B)(i). Section 1231(a)(1)(A) directs that "the Attorney General shall remove" a noncitizen who has been ordered removed during the 90-day removal period. To facilitate that removal, § 1231(a)(2)(A) directs that the Attorney General "shall detain" the noncitizen during the removal period. If the Attorney General does not remove the noncitizen within the 90-day removal period, the noncitizen "*may* be detained beyond the removal period." 8 U.S.C. § 1231(a)(6) (emphasis added).

**B.    *Zadvydas***

The text of § 1231(a)(6) does not have a time limit for the detention of noncitizens who are subject to removal orders. But a "statute permitting indefinite detention of an alien," the Supreme Court wrote in *Zadvydas*, "would raise a serious constitutional problem." 533 U.S. at 690. This is because civil detention violates the Fifth Amendment unless "a special justification . . . outweighs the 'individual's constitutionally protected interest in avoiding physical restraint.'" *Id.* (quoting *Kansas v. Hendricks*, 521 U.S. 346, 356 (1997)).

*Zadvydas* reconciled § 1231(a)(6) with the Fifth Amendment by interpreting § 1231(a)(6) as having an implicit, constitutional limit on post-removal period detention. The statute grants the Attorney General authority to detain aliens for the express purpose of facilitating their removal. 533 U.S. at 697. Therefore, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. Likewise, if detention

4

"exceeds a period reasonably necessary to secure removal," then continued detention is no longer authorized by statute." *Id.* at 699–700.

To aid courts in determining when removal is reasonably foreseeable, *Zadvydas* recognized a "presumptively reasonable period of detention" of six months. *Id.* at 700–01. "After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the government must respond with evidence sufficient to rebut that showing." *Id.* at 701.

**C.    Foreseeability of JPR's Removal**

JPR argues that he is entitled to release under *Zadvydas* because his removal is not significantly likely to occur in the reasonably foreseeable future. He has been subject to a final removal order for 15 months, so the 90-day removal period has passed. The respondents do not dispute that *Zadvydas*'s six-month period of presumptively reasonable detention has also expired.  JPR was initially detained for seven months after his removal order was entered before being removed to Honduras.  Since returning to the United States, he has now been detained for four months.

JPR argues that although the government has notified him that it intends to remove him to Mexico, the respondents have not designated evidence that Mexico has agreed to accept JPR or issued travel documents nor have they set a specific timeline for removal. And JPR's removal to Mexico is under challenge in the Seventh Circuit. So, it's unclear when JPR's removal to Mexico will be finalized and even whether it will be finalized at all.

On the other hand, the record shows that the government is actively engaged in arranging JPR's removal to Mexico. JPR returned to the United States from Honduras in March; the government notified him of its intent to remove him to Mexico in April; and it notified him of its determination that he could be removed there safely in May. While the record does not definitely show when JPR will be removed to Mexico, it shows that the process is ongoing. So on the current record, the Court finds that JPR has not carried his burden of demonstrating "good reason to believe that there is *no* significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701 (emphasis added).

Courts applying *Zadvydas*'s flexible standard have deferred to the government where the record shows an active—if not expedient—removal process. *See Lam v. English*, No. 3:26-CV-480-CCB-SJF, 2026 WL 1983130, at *2 (N.D. Ind. July 9, 2026) ("But given that the request to Canada has been pending for just about two months now, the court will defer to the government's assessment of foreseeability. *Zadvydas* explicitly contemplates that administrative delay in processing travel requests is to be expected. So, for now, Lam's detention remains authorized under § 1231(a)(6)."). Here, the record shows that the government is actively engaged in the process of removing JPR to Mexico and that only a few months have passed since that process began in late April after JPR was returned to the United States from Honduras. Moreover, JPR has not shown the existence of other circumstances that would support finding his removal is not reasonably foreseeable.

6

> Courts have found that removal is not reasonably foreseeable where "no country would accept the detainee, the country of origin refused to issue proper travel documents, the United States and the country of origin did not have a removal agreement in place, or the country to which the deportee was going to be removed was unresponsive for a significant period of time."

*Singhavara v. Noem*, 813 F. Supp. 3d 827, 836 (N.D. Ill. 2025) (quoting *Tshiteya v. Crawford*, No. 1:13CV894 JCC/IDD, 2013 WL 6635096, at *4 (E.D. Va. Dec. 16, 2013)). JPR has not shown that any of these circumstances apply here.

In sum, JPR's detention may continue until the record shows there is no significant likelihood of JPR's removal in the reasonably foreseeable future. This analysis is subject to change with the passage of time, so JPR's petition is denied without prejudice to refiling in the future.

**D.    Due Process**

JPR also argues that his current detention violates his due process rights under the Fifth Amendment.  There is no need for a separate due process analysis because as a practical matter, JPR's claims merge into one—"the *Zadvydas* standard *is* due process: a § 1231 detainee who fails the *Zadvydas* test fails to prove a due process violation." *Castaneda v. Perry*, 95 F.4th 750, 760 (4th Cir. 2024); *see also Wang v. Ashcroft*, 320 F.3d 130, 146 (2d Cir. 2003) ("Because the *Zadvydas* Court set forth this 'reasonable foreseeability' test in order to prevent § 1241 from violating the Due Process Clause, we may safely assume that this test articulates the outer bounds of the Government's ability to detain aliens (other than those serving criminal sentences) without jeopardizing their due process rights. Under *Zadvydas*, then, detention of an alien 'once

7

removal is no longer reasonably foreseeable' not only violates § 241, it also violates the Due Process Clause.").

## IV. Conclusion

JPR's unopposed motion for leave to proceed under a pseudonym, dkt. [4], is **granted**. His petition for a writ of habeas corpus is **denied without prejudice**. The **clerk is directed** to enter **final judgment**.

**SO ORDERED.**

Date: 7/17/2026

_James Patrick Hanlon_
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

Jess Hunter-Bowman
NATIONAL IMMIGRANT JUSTICE CENTER
jbowman@immigrantjustice.org

Liberty L. Roberts
Church Church Hittle & Antrim
lroberts@cchalaw.com

Paul Umbaugh, IV
DOJ-USAO
paul.umbaugh@usdoj.gov

8